JOHNSON v KEENE

Docket No. 95764. Submitted June 16, 1987, at Grand Rapids. Decided November 16, 1987.

In 1981, Vida Johnson was granted a divorce from Lesley D. Keene by a chancery court in Arkansas. The divorce judgment awarded custody of the minor child of the marriage to Johnson, subject to the reasonable visitation rights of Keene. The divorce judgment was modified by the Arkansas court in 1982 and again in 1983 to reflect changes in visitation rights and child support. In August, 1984, Johnson and the child moved to Michigan. On June 14, 1985, Keene petitioned the Arkansas court to modify the divorce judgment and grant him custody of the child. On August 27, 1985, the Arkansas court granted Keene custody based upon the failure of Johnson to allow Keene visitation in accordance with the court's prior orders and Johnson's neglect of the child's education. On August 30, 1985, the child was abducted by a person or persons unknown outside Johnson's home, with a copy of the Arkansas court's order being left with the child's playmate. The child eventually turned up with Keene who was then living in Japan. On February 28, 1986, Johnson commenced an action in Saginaw Circuit Court, seeking to have the August, 1985, Arkansas order set aside on the basis that the Michigan court rather than the Arkansas court had jurisdiction over the question of the child's custody. The Saginaw Circuit Court, Fred J. Borchard, J., declined to exercise jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act and held that Michigan was not a convenient forum to resolve the dispute in view of the fact that the child was then residing with Keene in Japan. Johnson appealed.

The Court of Appeals held:

1. Since the child resided in the State of Michigan from August, 1984, to August, 1985, Michigan became the "home

References

Am Jur 2d, Divorce and Separation §§ 963 et seq.; 1145.
Am Jur 2d, Parent and Child §§ 23 et seq.; 42.
Validity, construction, and application of Uniform Child Custody Jurisdiction Act. 96 ALR3d 968.

state" within the meaning of the Uniform Child Custody Jurisdiction Act. Having been established as the home state, Michigan courts could continue to exercise jurisdiction with respect to the custody of the child even though the child was absent from the state where, as here, custody proceedings were commenced within six months of the removal of the child from the state by one claiming custody and a parent claiming custody remains in the state. The fact that the actual removal of the child from the state was carried out by an agent of the nonresident parent rather than the nonresident parent himself will not defeat the intent and purpose of the act in continuing jurisdiction in the State of Michigan after the abduction.

2. While the Michigan court had jurisdiction to determine who should have custody of the child, the Michigan court should not exercise that jurisdiction under these circumstances. The Arkansas court properly had original jurisdiction of the question of who should have custody of the child as a result of the divorce action commenced in that state. The Arkansas court continued to exercise that jurisdiction. Johnson at no time prior to the adverse ruling of the Arkansas court objected to the Arkansas court's exercising continuing jurisdiction. To refuse to give effect to the Arkansas court's August, 1985, order would only encourage relitigation and forum shopping.

Affirmed.

W. J. CAPRATHE, J., while concurring with the majority's holding that the Michigan court had jurisdiction, dissented from the holding that jurisdiction should be declined. He would hold that although the Arkansas court had jurisdiction in August of 1985 when it modified the original custody decree, it lacked jurisdiction in February of 1986 when plaintiff filed her motion in Michigan. Therefore the Michigan court should have exercised its jurisdiction and made a custody determination on the basis of the best interests of the child.

1. PARENT AND CHILD — CHILD CUSTODY — JURISDICTION — UNIFORM CHILD CUSTODY JURISDICTION ACT.

    A Michigan circuit court has jurisdiction to issue a child custody decree pursuant to the Uniform Child Custody Jurisdiction Act, where the child in question had been a resident with a parent in the State of Michigan for more than six consecutive months, the parent remains a resident of the State of Michigan, and the child at the time of the commencement of the custody proceedings has been absent from the State of Michigan less than six months because of the removal from the State of Michigan by the nonresident parent or someone acting on behalf of the

nonresident parent (MCL 600.652[e], 600.653[1]; MSA
27A.652[e], 600.653[1]).

2. PARENT AND CHILD — CHILD CUSTODY — JURISDICTION — UNIFORM
   CHILD CUSTODY JURISDICTION ACT.

A Michigan circuit court, even if it has jurisdiction to issue a
child custody decree pursuant to the Uniform Child Custody
Jurisdiction Act, should decline to exercise that jurisdiction
where a foreign jurisdiction had original jurisdiction over the
child's custody pursuant to the divorce of the child's parents,
the foreign jurisdiction has continued to exercise its jurisdiction
by modifications of the original divorce and custody decree, and
the parent residing in Michigan had never challenged the
continuing jurisdiction of the foreign court until that court
issued a decree which was adverse to the Michigan parent's
custody of the child, since to accept jurisdiction under such
circumstances would encourage relitigation and forum shop-
ping (MCL 600.651 *et seq.*; MSA 27A.651 *et seq.*).

*Legal Services of Eastern Michigan* (by *Irene
Sivavajchaipong* and *Edward J. Hoort*), for plain-
tiff.

Before: SAWYER, P.J., and MACKENZIE and W. J.
CAPRATHE,* JJ.

SAWYER P.J. In this case, we are called upon to
review the circuit court's refusal to exercise juris-
diction over this child custody dispute pursuant to
the Uniform Child Custody Jurisdiction Act
(UCCJA), MCL 600.651 *et seq.*; MSA 27A.651 *et seq.*
We affirm.

Plaintiff and defendant were granted a divorce
in 1981 by an Arkansas chancery court. The di-
vorce judgment awarded custody of the child to
plaintiff, subject to the reasonable visitation rights
of defendant. The divorce judgment was twice
modified by the chancery court, in 1982 and 1983,
to reflect changes in visitation rights and child
support. In August of 1984, plaintiff and the minor

---

* Circuit judge, sitting on the Court of Appeals by assignment.

child moved to Michigan. The divorce judgment did not require permission of the Arkansas chancery court prior to the move.

On June 14, 1985, defendant petitioned the Arkansas chancery court to modify the decree of divorce and grant him custody of the child. On August 27, 1985, the chancery court granted defendant custody of the child based on its findings that plaintiff had continually denied defendant visitation and all contact with the child contrary to the prior orders of the court and that plaintiff had neglected the child's education. The chancellor granted plaintiff reasonable visitation rights, but only on the condition that plaintiff appear and explain her violation of the prior court orders.

On August 30, 1985, the minor child was playing with a friend outside plaintiff's home when a person or persons unknown swept the child away, leaving a copy of the Arkansas court order with the child's playmate. Approximately two months later, plaintiff received a letter from the child dated September 28, 1985, which indicated that the child was with her father in Japan, where he was apparently serving on active duty as a career officer in the United States Air Force.

On February 28, 1986, plaintiff filed a motion in the Saginaw Circuit Court to have the August 27, 1985, Arkansas order set aside or modified. Plaintiff argued in the alternative that the Arkansas court lacked subject matter jurisdiction to issue the custody decree and that Michigan now had jurisdiction to modify the Arkansas decree. Defendant did not appear before the circuit court.

The circuit court issued an opinion concluding that it lacked jurisdiction to determine whether Arkansas had jurisdiction to modify the terms of the divorce decree and that Michigan was an inconvenient forum to resolve the dispute given

the fact that the child was presently living in Japan. The circuit court did indicate, however, that it would reconsider its ruling on the forum non conveniens issue in the event that the child returned to the United States. Plaintiff now appeals.

We do not believe that the issue directly before us, or for that matter before the circuit court, is whether a Michigan court has jurisdiction to determine whether or not a sister state had jurisdiction to issue a custody order. Rather, the question before us and the circuit court is whether a Michigan court now has jurisdiction to issue its own custody decree and whether it should exercise that jurisdiction. However, as will be discussed below, the resolution of that issue does involve, at least indirectly, the question of the proper jurisdiction of the Arkansas court.

The jurisdiction of the circuit court to issue a custody decree is contained in MCL 600.653(1); MSA 27A.653(1), which provides as follows:

> A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree or judgment if any of the following exist:
>
> (a) This state is the home state of the child at the time of commencement of the proceeding or had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.
>
> (b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least 1 contestant, have a significant connection with this state and there is available in this state substan-

tial evidence concerning the child's present or future care, protection, training, and personal relationships.

(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (a), (b), or (c) or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child and it is in the best interest of the child that this court assume jurisdiction.

Turning to § 653(1)(a), we believe that the circuit court could exercise jurisdiction under this provision. MCL 600.652(e); MSA 27A.652(e) defines "home state" as follows:

"Home state" means the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of the named persons are counted as part of the 6-month or other period.

In the case at bar, the minor child was in Michigan until August 30, 1985. The instant action was filed in the Saginaw Circuit Court on February 28, 1986. Prior to being removed from the state in August of 1985, the child had lived in Michigan for approximately one year. Thus, Michigan had been the child's home state within six months prior to the commencement of the proceedings, albeit barely, and the child is absent from the state because of her removal by a parent,

namely defendant.[1] Accordingly, we believe that the circuit court had jurisdiction to consider a change in child custody pursuant to MCL 600.653(1)(a); MSA 17A.653(1)(a).[2]

Although we have concluded that Michigan has jurisdiction over the child custody dispute pursuant to Michigan law, our inquiry cannot end there. Rather, we must now look at another provision of the UCCJA which limits the authority of one state to modify the custody decrees of a sister state. MCL 600.664(1); MSA 27A.664(1) provides as follows:

> If a court of another state has made a custody decree or judgment, a court of this state shall not modify that decree or judgment unless it appears to the court of this state that the court which rendered the decree or judgment does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with sections 651 to 673 or has declined to assume jurisdiction to modify the decree or judgment and the court of this state has jurisdiction.

Thus, the circuit court of this state cannot modify the Arkansas order unless it appears that Arkan-

[1] We do note that, at the present time, the exact nature of the events leading up to the child's removal from Michigan is uncertain. Apparently, the description of the individual who took the child did not match that of defendant. However, because a copy of the Arkansas custody order was left with the child's playmate, we believe there is strong indication that the child was removed by an agent of defendant. An action by defendant's agent should be considered the same as action by defendant since to distinguish between the two would be to allow defendant to achieve through the back door that which he could not achieve through the front door.

[2] We also note that there appears to be a strong argument that the circuit court could exercise jurisdiction under § 653(1)(b) and also under (d), in the latter case assuming that Arkansas did not have jurisdiction. However, we choose not to address those issues at this time since we found jurisdiction under (a). In any event, jurisdiction would not be assumable under (c) as the child was not physically present in Michigan.

sas does not have jurisdiction or that it has declined jurisdiction. Since the Arkansas court did issue an order, it is obvious that it has not declined jurisdiction, and, thus, our inquiry is limited to the question of whether the Arkansas court possessed jurisdiction.

Turning to § 653(1), which was quoted above, it would not appear that the Arkansas court of chancery would have jurisdiction under § 653(1)(a), as Arkansas was not the home state of the child either at the time of the commencement of proceedings or within the six months prior to the commencement of proceedings. Similarly, the Arkansas court would have no jurisdiction under (1)(c), as the child was not physically present in Arkansas. With respect to (1)(d), since, as concluded above, Michigan would have jurisdiction, subparagraph (d) would be inapplicable for that reason. Thus, it would appear that if Arkansas continued to have jurisdiction, it would be under (1)(b) or not at all.

Section 653(1)(b) establishes jurisdiction if it is in the best interest of the child that a court of that state assume jurisdiction because there is a significant connection with the forum state and the child and at least one contestant and there is available evidence in the state concerning the child's present or future care, protection, training, and personal relationships.

Concerning the significant connection test, we believe that there is a sufficient connection between the child and her parents and Arkansas inasmuch as Arkansas was the forum of the divorce and the subsequent modifications to that judgment. Accordingly, Arkansas had, and continues to have, an ongoing connection with this case. With respect to the somewhat more subjective factors of the child's best interests in Arkansas

possessing jurisdiction and the availability of evidence in Arkansas, we would follow the reasoning of the trial court that it would not be appropriate for a Michigan court to second-guess the Arkansas court in its decision to continue to exercise jurisdiction.[3] We believe that the best policy to follow is to refrain from modifying the custody decree of our sister state where it would appear that our sister state continues to possess jurisdiction in the matter.

Indeed, we believe that giving such deference to our sister states is necessary to effectuate the policy considerations behind the UCCJA. The UCCJA was adopted for the purposes of, inter alia, avoiding jurisdictional competition between the various states, avoiding removal of children to other states where a favorable custody decree may be obtained, avoiding relitigation of custody decisions of other states, and detering continuing controversies over child custody. MCL 600.651(1); MSA 27A.651(1).[4] While it would appear that plaintiff moved to Michigan for reasons unrelated to the child custody dispute and was not merely engaging in forum shopping, we do note that plaintiff attempted to invoke the jurisdiction of the circuit court only in reaction to an unfavorable custody order of the Arkansas court. That is, we are not faced with a case wherein a foreign divorce decree

[3] We acknowledge that there is nothing in the record before us to suggest that the question of Arkansas jurisdiction was raised during the Arkansas proceeding. However, the fact that the Arkansas court of chancery entertained defendant's motion and did issue an order suggests that the chancellor of the court believed he had jurisdiction to issue the custody modification.

[4] We acknowledge that some of the policies behind the UCCJA, as expressed in § 651, would support Michigan exercising jurisdiction over the child in the case at bar since there was a connection between the child, plaintiff, and the State of Michigan, as they had lived here for approximately one year. However, we believe that comity behooves us to give deference to Arkansas since it was the original forum of the divorce and had recently issued a custody order.

was rendered some time ago and has not been recently modified and one of the parties now seeks modification due to a change in circumstance. Rather, we are faced with a very recent modification order which directly prompted plaintiff to file the instant action.[5]

Furthermore, we note that, if plaintiff believed Arkansas to no longer have jurisdiction or, even if continuing to have jurisdiction, that Arkansas no longer was the most appropriate forum for the custody dispute, plaintiff had the opportunity prior to the issuance of the last order from the court of chancery to request that the Arkansas court relinquish jurisdiction. Plaintiff, however, did not answer defendant's motion in Arkansas nor did she appear in the Arkansas chancery court. To our knowledge, plaintiff did not even send a written request to the chancery court to decline jurisdiction in favor of Michigan, which plaintiff could have done even if she were unable to travel to Arkansas to respond to the motion. Rather, plaintiff chose to ignore the Arkansas proceedings and, after the Arkansas court entered an order unfavorable to plaintiff, she rushed into a Michigan court seeking to have the Arkansas order set aside. While our reasoning differs in some manner from the circuit court's reasoning, we believe that the circuit judge properly deferred to the Arkansas chancery court in this matter.

Because of our resolution of the above issue, we find it unnecessary to separately consider the questions of whether the trial court properly declined jurisdiction on the grounds that Michigan was a forum non conveniens. However, we do note that our decision does not necessarily conflict with the

[5] We also note that it was plaintiff who originally chose Arkansas as the forum of the divorce. It is not as if plaintiff never desired Arkansas to consider the matter.

conclusion that Michigan is an inconvenient forum
for this matter.

Affirmed. Costs to defendant.

MacKenzie, J., concurred.

W. J. Caprathe, J. *(concurring in part and dissenting in part)*. I agree with the majority's conclusion that the circuit court had jurisdiction to
consider a change in custody pursuant to MCL
600.653(1)(a); MSA 27A.653(1)(a). However, I respectfully dissent from the majority's opinion that
the circuit court properly deferred to the Arkansas
chancery court in this matter.

Under MCL 600.653(1); MSA 27A.653(1), if the
court which rendered the decree, i.e., the Arkansas
court, does not now have jurisdiction, then the
circuit court should entertain a motion to modify
the Arkansas decree. To determine if the Arkansas
court had jurisdiction under the Uniform Child
Custody Jurisdiction Act, MCL 600.651 *et seq.*;
MSA 27A.651 *et seq.*, one must look to the date of
the filing of the motion to modify the decree. See
*Bull v Bull,* 109 Mich App 328, 337; 311 NW2d 768
(1981).

Although Arkansas had jurisdiction on August
27, 1985, when it modified its original custody
decree, it did not have jurisdiction on February 28,
1986, when plaintiff filed her motion in the circuit
court to modify the Arkansas decree.

At that time, Arkansas lacked significant connection with the child and at least one party. The
father and the child were in Japan and the mother
was in Michigan. Arkansas no longer had available evidence concerning the child's present or
future care, protection, training, and personal relationships. Accordingly, Arkansas did not have jurisdiction. MCL 600.653(1)(a); MSA 27A.653(1)(a).

Since Michigan had jurisdiction over this matter under the home state rule, and Arkansas did not, the trial court should have entertained the motion to have the Arkansas order set aside or modified.

The trial court's finding that Michigan was an inconvenient forum also was an insufficient reason to refuse to assert jurisdiction. Under the UCCJA, a finding of inconvenient forum cannot be properly made unless the court finds that another state is a more convenient forum. MCL 600.657(5); MSA 27A.657(5). See *Pennsylvania ex rel Octaviano v Dembrowski*, 290 Pa Super 322; 434 A2d 774 (1981). This is especially necessary in the present case where the state rendering the original custody decree lost its jurisdiction, leaving only Michigan as an appropriate forum to litigate this dispute. Therefore, the trial court did not properly exercise its discretion.

I would remand this matter for further proceedings, including consideration of the ramifications of the Soldiers' and Sailors' Relief Act of 1940, as amended, 50 USC 501 *et seq.*